**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VINCENT LUCAS,                                    Case No. 1:15-cv-108

    Plaintiff,                                   Black, J.
                                                  Bowman, M.J.
    v.

AURELIO JOLIN, et al.,

    Defendants.

**REPORT AND RECOMMENDATION**

The above captioned case involves Plaintiff's allegations of illegal telemarketing practices. Pursuant to local practice, this case has been referred to the undersigned magistrate judge for pretrial management and for initial consideration of any dispositive matters by report and recommendation ("R&R").

On May 16, 2016, the undersigned filed an R&R that recommended the denial of two pending dispositive motions: (1) a motion for default judgment against Defendants Aurelio Jolin. Visram, Inc., Premium Outsource Solutions, and Shawn Wolmuth; and (2) a motion for summary judgment filed by Defendant Net VoIP. The recommended denial was without prejudice to renew.  Shortly after the R&R was filed, Plaintiff and Defendant Net VoIP filed a joint motion to dismiss Plaintiff's claim against Net VoIP with prejudice. By Order filed June 29, 2016, Judge Black granted that motion.  Because the reasoning of the May 16, 2016 R&R was heavily dependent on the pendency of the claims against Net VoIP, Judge Black rejected the pending R&R as moot and recommitted the matter to the undersigned.

1

On June 27, 2016, Plaintiff filed a renewed motion for default judgment against all four remaining Defendants (Doc. 82). For the reasons that follow, the undersigned recommends that Plaintiff's motion for default judgment be granted in part, and that this case be closed.

### I. Background

Seeking monetary damages and injunctive relief, Plaintiff initiated this litigation *pro se* on February 11, 2015, naming three Defendants: Victor Jolin, a Philippine telemarketer; Visram, Inc., a company incorporated in Panama; and "John Doe." On June 9, 2015, Plaintiff filed his first amended complaint, identifying "John Doe" as an individual named Kevin Jay Calvin, d/b/a "Made in America Cleaning and Restoration." Thereafter, summons was issued and executed as to Defendant Calvin. (Docs. 12, 14). When Calvin failed to timely answer or respond as required, an entry of default was filed against him. (Docs. 16, 17). The Court later granted Plaintiff's motion for entry of default judgment against Calvin. (Docs. 31, 37).

On July 27, 2015, the Court granted Plaintiff's renewed motion to serve the Philippine Defendant, Aurelio Jolin (a/k/a Victor Jolin), by email. (Doc. 19). On August 20, 2015, an entry of default was filed against Jolin on the first amended complaint. Plaintiff now seeks entry of default judgment against that same Defendant, seeking to hold him liable for a prior default judgment obtained against a Philippine company, Qall Cord, in 2012 case filed by Plaintiff, Case No. 1:12-cv-630, regarding a prior series of telemarketing calls allegedly made to Plaintiff in violation of federal law.[1]

---

[1]This Court previously noted that, to the extent that Plaintiff would proceed against Jolin, "it appears unlikely that Plaintiff would be able to collect on any such judgment against a Philippine Defendant who has declined to appear." (Doc. 30). However, Plaintiff's motion informs this Court that, notwithstanding his failure to collect in this case, he has collected $20,142 from Qall Cord in a Missouri state court case,

2

Jolin was not a party to Case No. 1:12-cv-630, but Plaintiff alleges that he nevertheless should be held personally liable for Qall Cord's debt. (*See* Doc. 10, Amended Complaint at ¶¶6-10, 32 and at page 12-13). Plaintiff's first amended complaint further alleges that Jolin made new telemarketing calls through a Panamanian telemarketing company, Visram Inc.

On November 1, 2015, Plaintiff filed a second amended complaint alleging claims for invasion of privacy, violation of the federal TCPA, the Ohio Telemarketing Act, the Ohio Telephone Solicitation Act, negligence, civil conspiracy, "personal liability" of individual defendants, and various theories of corporate liability, seeking treble and punitive damages against all Defendants, as well as permanent injunctive relief, including but not limited to a prospective order imposing liquidated damages for any future illegal telemarketing calls. (Doc 32.) The undersigned permitted Plaintiff to amend his complaint despite clearly stated reservations concerning the legal bases for many of Plaintiff's theories. Noting Plaintiff's proclivity to continue to file newly amended complaints adding new claims and Defendants in his 2012 litigation, the Court instituted a deadline by while all further amendments were required to be filed in this case.

After Plaintiff successfully moved to amend his complaint a second time within that deadline, summons was issued and executed on Net VoIP, Premium Outsourced Solutions, Inc. and Shawn Wolmuth. (*See* Docs. 39, 47).

Only one Defendant in this action, Net VoIP, ever appeared and filed an answer. (Doc. 42). Defendant Net VoIP subsequently a motion for summary judgment. (Doc. 68).

---

*Lucas v. Qaall Cord Philippines, Ltd. Co.*, Case No. 1311-CC00992, St. Charles County, MO. (Doc. 69 at n.3).

Entries of default have been entered against all other Defendants. That entry of default occurred against Jolin on the first amended complaint. (Doc. 25). Summons on the second amended complaint was issued for Jolin and returned unexecuted. (Docs. 48, 53).

On December 21, 2015, the Clerk filed an Entry of Default against Premium Outsourced Solutions Inc. on the second amended complaint. (Doc. 56). Summons on the second amended complaint was issued via certified mail but returned unexecuted as to Shawn Wolmuth. (Doc. 52). However, after an additional summons was sent and not returned via regular mail, (Doc. 50), Plaintiff's application for entry of default against Wolmuth was granted. (Doc. 59). Last, after an initial entry of default against the Panamanian company, Visram, Inc. was set aside for failure of proof of effective service, Plaintiff submitted the requisite proof and the Clerk's entry of default on the second amended complaint was reinstated against that foreign entity. (Docs. 60, 63, 65-67).

## II. Analysis of Pending Motion for Default Judgment

Plaintiff has moved for entry of default judgment against all four Defendants as to whom an entry of default has been filed to date, including Philippine defendant Aurelio a/k/a "Victor" Jolin, Panamanian company Visram, Inc., and the two Florida defendants: Premium Outsourced Solutions Inc., and Shawn Wolmuth.

In the May 16, 2016 R&R the undersigned recommended that the Plaintiff's pending motion for default judgment be denied without prejudice to renew, due in large part to issues presented by the recommended denial of Defendant Net VoIP's motion for summary judgment. Now that Net VoIP as the only appearing Defendant has been

dismissed, the undersigned recommends granting default judgment against the aforementioned four Defendants.

When the Clerk has filed an entry of default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. However, while factual allegations will be accepted as true, judgment will not be entered unless it appears that those allegations support liability as a matter of law. *See e.g., Johnson v. Levi Strauss*, 2009 WL 4806467 (S.D. Ohio Dec. 9, 2009) (default judgment cannot be entered when the complaint fails to state a claim upon which relief can be granted).

### A. Liability of the Aurelio "Victor" Jolin for Previously Adjudicated Claim

Plaintiff's second amended complaint alleges that Jolin should be held personally liable for the prior default judgment against Qall Cord in Case No.1:12-cv-630. In his renewed motion for default judgment, Plaintiff addresses the reservations articulated by the undersigned in her May 16, 2016 R&R regarding Defendant Jolin's liability for the previous judgment against Qall Cord. Plaintiff asserts that the undersigned could adopt one of two separate theories to find Jolin liable.

First, the Plaintiff argues that the undersigned could"[i]magine that the judgment against Qall Cord does not exist." (Doc. 82, PageID 592.) The Plaintiff reasons that Jolin would be liable for calls made between July 2011 and January 2013, because Jolin "operated and controlled the automated calling system that originated the calls." (Doc. 32 at ¶ 7.)  Alternatively, the Plaintiff argues that the undersigned could view this as a post-judgment action to "pierce the corporate veil" so that Plaintiff can now collect the Qall Cord judgment from Jolin. (*Id.*, PageID 594.)

5

The undersigned rejects both of Plaintiff's novel theories.  Plaintiff cannot ask the undersigned to at once ignore the existence of the previous judgment, but to also use information alleged in the previous judgment to find Jolin liable. The fact remains that Plaintiff failed to assert his prior claims against Jolin regarding the telephone calls at issue in his claims against Qall Cord, and Jolin had no opportunity to litigate the matter. Plaintiff has not alleged enough facts to show that Jolin was an officer of Qall Cord at the time these calls were placed, or that any other relationship existed that would subject the non-party Jolin to liability as a matter of law for the default judgment entered against Qall Cord in the 2012 case.  The undersigned is unaware of any authority to review old claims in a closed case in order to assign new and additional liability to a nonparty who was not in privity with any of the parties to the prior litigation. Therefore, the Plaintiff's arguments are rejected and the undersigned finds no legal basis to hold Jolin liable for the previous default judgment against Qall Cord.

      **B.**    **Liability of Four Defendants for 12 Calls Placed since 2015**

Although Plaintiff seeks to hold Jolin liable for the prior default judgment against Qall Cord, which related to an entirely different set of telemarketing calls, the primary claims in this action concern twelve new telephone calls allegedly placed to Plaintiff's home telephone number.   Plaintiff alleges that Jolin is also liable for the twelve more recent calls, together with the other three defaulting Defendants.

Under a relatively complex series of intertwined relationships, Plaintiff alleges that after the previous lawsuit, EngageTel, Inc. (which is not a party herein) paid "CNAM 'dip' revenue" to Defendant Premium Outsourced Solutions, a dissolved Floridian corporation, instead of to Defendant Visram, for 12 calls at issue in this

litigation.  Plaintiff alleges that Shawn Wolmuth was and/or remains the President and Director of the dissolved corporate entity, Premium Outsourced Solutions.

Plaintiff alleges that Jolin personally made the same 12 calls on behalf of Defendant Premium Outsourced Solutions in order to sell Premium Outsourced Solutions' debt management services. (Doc. 32 at ¶12). The complaint alleges that despite its dissolution, Premium Outsourced continued operating and appointed the Panamanian company, Visram, as its agent, for the purpose of making the illegal calls, but then gave Visram authority to appoint a subagent in the Philippines (Jolin) to actually make the calls. (Doc. 32 at ¶¶15, 36-40). Plaintiff pleads alternative agency theories of liability whereby each of the Defendants share joint and several liability.

As Plaintiff indicates, under Florida law, a corporation may be sued up to four years after its dissolution. Fla. Stat. § 605.0712(1)(b) ("a claim against the company is barred unless an action to enforce the claim is commenced within 4 years after the filing of the notice").  Furthermore, the four year window of opportunity may be expanded for those plaintiffs, like Mr. Lucas, who have claims that are "contingent at or based on an event occurring after the effective date of dissolution." Fla. Stat. § 605.0712(2)(c).

Plaintiff argues that this Court should rule in favor of default judgment based upon a theory of vicarious liability under the TCPA, which Plaintiff argues is "completely different" than the theory of vicarious liability that the undersigned rejected in Case No. 1:12-cv-630, because here Plaintiff alleges a direct agency relationship. (Doc. 69 at 4).  Plaintiff argues that because he alleges agency by actual

7

authority, it is unnecessary to consider whether Visram and Premium Outsourced Solutions could be liable under other agency theories. (Doc. 69 at 5).

The Federal Communications Commission previously addressed the issue of vicarious liability under the TCPA in response to three petitions for a declaratory ruling from federal courts. *In re Dish Network, LLC, et al.*, 28 F.C.C.R 6574, FCC 13-54 (2013). The FCC summarized its interpretation of the statute as follows:

> As government and consumer commenters argue — and as the telemarketing industry acknowledges — the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

*Id.* at 6588 (footnotes omitted). The form of vicarious liability the FCC reads into the statute is that of the seller, not based on any sort of agency relationship but instead to incentivize sellers to ensure that the telemarketing companies with which they contract abide by the TCPA.

Accepting the factual allegations contained in the first and second amended complaints as true, the undersigned finds that Plaintiff has adequately alleged that Defendants Visram, Inc. and Aurelio "Victor" Jolin both operated as telemarketers and placed the telemarketing calls at issue. In addition, Plaintiff's complaint as amended adequately alleges that Premium Outsourced Solutions, Inc. and Shawn Wolmuth

8

jointly operated as "sellers." Because both telemarketers and sellers may be held liable for the 12 phone calls allegedly made to Plaintiff in violation of TCPA, the undersigned finds a legal basis exists on which to enter judgment against all four defaulting Defendants.

### C. Relief Sought by Plaintiff

` In his complaint as amended and in his motion for default judgment, Plaintiff seeks both monetary and injunctive relief. Pursuant to the TCPA, an aggrieved person may recover statutory damages of $1500 for each willful or knowing violation of the automated-call requirements, §227(b)(3), as well as $1500 for a willful or knowing violation of the do-not-call-list requirements, §227(c)(5). Thus, Plaintiff may recover $3,000 per telephone call in damages under the TCPA. *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011).

Plaintiff is entitled to an additional $200 for each violation of Ohio Rev. Code § 1345.02. Plaintiff alleges that each pre-recorded telemarketing call contains at least four distinct violations of Ohio Rev. Code § 1345.02, which amounts to $800 per call. The amount of $3800 per call was calculated as the appropriate amount of damages in Plaintiff's 2012 litigation, in the context of default judgments entered therein. Therefore, the undersigned recommends that the Plaintiff be awarded $3800 for each of 12 calls, in an amount that totals $45,600. All four Defendants are jointly and severally liable for that award.

Plaintiff also asks for a permanent order requiring Defendants to pay the Plaintiff $1500 each and every time in the future that any Defendant places any future call to the Plaintiff, plus an additional $1500 each time that any Defendant places a future call

9

that uses an artificial or pre-recorded voice. The undersigned finds such injunctive relief inappropriate.

In the alternative, Plaintiff seeks a permanent injunction against all Defendants, prohibiting each Defendant from violating 47 U.S.C. § 227, Ohio Rev. Code § 4719, or Ohio Rev. Code § 1345.  Because similar injunctive relief was granted in the 2012 litigation, it is recommended herein.

### III.     Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT:**

1. Plaintiff's most recent unopposed motion for default judgment against Defendants Aurelio "Victor" Jolin, Visram, Inc., Shawn Wolmuth and Premium Outsourced Solutions, Inc. (Doc. 82) be **GRANTED;**

2. The prior motion for summary judgment and prior motion for default judgment (Docs. 68, 69) be DENIED AS MOOT;

3. Defendants Aurelio "Victor" Jolin, Visram, Inc., Shawn Wolmuth and Premium Outsourced Solutions, Inc. should be directed to pay Plaintiff damages in the total amount of $45,600, together with costs, with interest to be paid at the statutory rate from the date that final judgment is entered by the district court, until said judgment is satisfied;

4. Defendants and their employees, agents and aliases, and all other persons acting directly or indirectly in concert with Defendants, should be permanently enjoined from engaging in any unfair, deceptive, or unconscionable act or practice in violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, or Ohio's Consumer Sales

      Protection Act, Ohio Rev. Code §§ 1345.01 et seq., or Ohio's Telephone Sales Solicitation Act, Ohio Rev. Code §§ 4719.01 et seq., as well as the related provisions of the Ohio Administrative Code;

5. Following entry of the recommended default judgments, as no other claims remain pending, this case should be CLOSED.


                                                <u>*s/Stephanie K. Bowman*</u>
                                                Stephanie K. Bowman
                                                United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| VINCENT LUCAS, | Case No. 1:15-cv-108 |
| Plaintiff, | Black, J.<br>Bowman, M.J. |
| v. | |
| AURELIO JOLIN, et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).