# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

VINCENT LUCAS,

    Plaintiff,

  v.

AURELIO JOLIN, et al.,

    Defendants.

Case No. 1:15-cv-108

Black, J.
Bowman, M.J.

## OPINION AND ORDER

### I. Background

The above captioned case involves Plaintiff's allegations of illegal telemarketing practices. Pursuant to local practice, this case was referred to the undersigned magistrate judge for pretrial management and for initial consideration of any dispositive matters by report and recommendation ("R&R").

Seeking monetary damages and injunctive relief, Plaintiff initiated this litigation *pro se* on February 11, 2015, naming just three Defendants: Victor Jolin, a Philippine telemarketer; Visram, Inc., a company incorporated in Panama; and "John Doe." On June 9, 2015, Plaintiff filed his first amended complaint, identifying "John Doe" as an individual named Kevin Jay Calvin, d/b/a "Made in America Cleaning and Restoration." Thereafter, summons was issued and executed as to Defendant Calvin. (Docs. 12, 14). When Calvin failed to timely answer or respond Plaintiff's first amended complaint as required, on July 22, 2015, an entry of default was filed against him. (Docs. 16, 17).

Plaintiff filed a motion seeking immediate default judgment against Calvin based upon Plaintiff's assertion that there was a significant risk of insolvency of that Defendant if judgment were not immediately entered. In support of that assertion, Plaintiff stated that in April 2015, "[d]efault judgment has been entered against Calvin…for $949,245" in a similar telemarketing case brought against the Defendant by the State of Texas, involving allegations that Calvin made more than 21,000 illegal calls to Texas residents. Based upon Plaintiff's representations,[1] the Court granted Plaintiff's motion for entry of default judgment against Calvin despite expressing a general reluctance to enter default judgments "piecemeal." (Docs. 31, 37). The Court directed Defendant Calvin to pay Plaintiff damages in the amount of $22,800, representing $3,800 per call for a total of six calls, which calls were alleged to have been placed by Calvin on 9/3/14, 9/19/14, 10/8/14, 11/8/14, 11/19/14, and 12/12/14. (*Id.*) Judgment was entered in that amount against Defendant Calvin on Plaintiff's first amended complaint. (Doc. 38), and Plaintiff submitted his bill of costs.

In the meantime, Plaintiff filed a second amended complaint and continued to litigate additional claims against additional defendants. During the course of this litigation, Plaintiff dismissed claims against two Defendants, Starion Energy and Net VoIP Communications, Inc. Plaintiff obtained entries of default against four other Defendants who failed to appear.

On July 15, 2016, the undersigned filed a Report and Recommendation ("R&R") that recommended, in part, granting Plaintiff's unopposed motion for default judgment against the last four remaining Defendants. The undersigned further recommended

---

[1] "[T]he recent entry of a nearly million dollar judgment against the same Defendant in the Texas case provides an adequate basis alone for departing from" Sixth Circuit cases advocating against the piecemeal entry of default. (Doc. 31 at 6-7).

directing those four defaulting parties to pay Plaintiff the sum of $45,600, together with costs and interest to be calculated at the statutory rate from the date of final judgment. (Doc. 85).  Because the R&R resolved all remaining claims against all remaining Defendants in the case, the undersigned recommended that final judgment be entered and that this case be closed. (*Id.*)

On September 19, 2016, the presiding district judge adopted the R&R with one exception.  Noting that a motion to compel had been filed by the Plaintiff <u>after</u> the filing of the R&R, the district judge found it "inappropriate to close the case at this time," instead referring the matter back to the undersigned to review the most recently filed motion.  However, the R&R was otherwise adopted in full, including the calculation of costs and interest "to be paid at the statutory rate from the date of <u>final</u> judgment…." (Doc. 88 at 2, emphasis added).  Based on the Court's order, this case has not yet been closed, and final judgment has not yet been entered.  Arguably, therefore, post-judgment interest is not yet accruing.

**II.     Analysis**

As explained above, back in October of 2015, the undersigned recommended granting Plaintiff's motion for entry of default judgment on his first amended complaint against one of the first Defendants named by Plaintiff in this lawsuit, Kevin Calvin.  That recommendation was adopted by the Court in an Order filed on November 18, 2015. (Docs. 37, 38).  However, attempted service of that Order by mail on Defendant Calvin was subsequently returned as undeliverable, (Doc. 51),[2] and it appears that Plaintiff has not been able to collect on his default judgment.

---

[2] Summons on the complaint originally was returned as executed, signed by "K Calvin" on June 26, 2015, and filed of record on July 2, 2015.  (Doc. 14).  However, a subsequent return of mail sent to the same

3

Given the existence of a pre-existing judgment in the amount of nearly one million dollars against the same individual Defendant previously entered by a Texas court, the undersigned cannot help but wonder about the likelihood of Plaintiff's ability to recover his later-filed $22,800 judgment against the same Defendant. However, this Court will continue to assist Plaintiff in his quest to pursue relief against the defaulting Defendant to the extent allowed under federal law.

The recently filed motion is Plaintiff's second post-judgment attempt to obtain information concerning the whereabouts and assets of the elusive Mr. Calvin. On June 27, 2016, Plaintiff filed a motion to compel non-party Trans Union LLC, a credit reporting agency, to produce a "full credit report" for Defendant Calvin. Plaintiff sought the order pursuant to Rules 45 and 69 of the Federal Rules of Civil Procedure, as well as under 15 U.S.C. § 1681b(a)(1). The undersigned granted Plaintiff's request and entered an order on July 12, 2016 that directed Trans Union to produce Defendant Calvin's full credit report as requested, to assist Plaintiff as a judgment creditor in obtaining discovery that could assist him in his efforts to collect on the judgment he has obtained from this Court. (Doc. 84).

Around the same time, Plaintiff issued a separate subpoena to Waycross South Properties LLC, another non-party to this litigation with an alleged property relationship with Mr. Calvin. Waycross South leases commercial office space in Cincinnati, Ohio. According to documents filed in the same Texas litigation upon which Plaintiff previously relied to obtain his default judgment against Calvin, the State of Texas was able to

---

Las Vegas, Nevada residence suggests that the residence is occupied by the Defendant's father, and is not a valid address for the Defendant.

obtain service on Defendant Calvin in December 2014 at office space rented by Calvin from Waycross South.

An affidavit filed by the Texas Attorney General in *State of Texas v. Calvin*, Case No 4:14-cv-00654-O, reflects that although Mr. Calvin occasionally "listed" a Las Vegas, Nevada residence, that address was that of "Defendant's parents and Defendant Calvin was unlikely to be found at that residence." (*Id.*, Doc. 6 at 3).[3] The father of the Defendant informed counsel that he had not been in recent contact with his son. (Doc. 6 at 5). According to the Texas AG, shortly after the filing of the Texas lawsuit, Calvin moved his telemarketing operation from Texas to rented office space in the state of Georgia. However, as of August of 2014, the property manager in Georgia informed counsel that Calvin had abruptly abandoned the office, leaving behind "routers and a bunch of wires." (Doc. 6 at 3). The property manager further informed counsel that Calvin had paid for his first month of rent via check, but that the check had bounced and Calvin had made no other payments. (Doc. 6-1 at 2).

By mid-September 2014, Texas had ascertained that Defendant Calvin had moved his telemarketing operation to Cincinnati, Ohio. Texas counsel made multiple attempts to contact the Defendant through the use of an investigator. (*Id.* at 4-5). In November 2014, counsel discovered that Defendant Calvin was renting office space at 431 Ohio Pike, Cincinnati, Ohio, from Waycross South. Counsel or his agents made "at least 12 unsuccessful attempts to serve Defendant Calvin at that address, including conducting a stakeout at the address for one or more hours on three different occasions." (Doc. 6 at 5, ¶12). After obtaining an extension of time in which to

---

[3]The father's name appears to be "James Calvin." Notwithstanding the more recent return of mail sent by this Court to the Las Vegas address, the summons initially filed in this Court appears to have been accepted by "K. Calvin."

5

complete service on Calvin, the Texas AG eventually achieved service on Calvin at the Ohio Pike office address (leased from Waycross South) on December 19, 2014. After Calvin failed to answer or otherwise appear in the Texas case, a default judgment was entered on April 13, 2015 in the amount of nearly one million dollars. There is no information in the Texas record following the entry of judgment.

Based upon the alleged failure of the statutory agent of Waycross South to respond to Plaintiff's subpoena seeking information about Calvin in this case, Plaintiff now asks an Order from this Court to force Waycross South to respond to the subpoena "and to find Waycross South in contempt of court." (Doc. 87). The undersigned will only partially grant Plaintiff's request, by compelling Waycross to respond.

Plaintiff states that he served the subpoena on Waycross South in July 2016, seeking the production of a wide range of documents, including any lease application forms, Calvin's last known address and telephone number, Calvin's Social Security number, his license plate number and issuing state of any vehicles owned or used by Calvin, his driver's license number and issuing state, any credit reports or background checks on Calvin, copies of methods of payment including checks, routing numbers, credit card account numbers, any other information regarding Calvin's financial accounts, and any other information regarding Calvin's assets. The same information was requested for Calvin and/or any business relating to him that may have leased the office space at 431 Ohio Pike back in December 2014.

According to Plaintiff, the statutory agent for Waycross South was served with the subpoena <u>by mail</u>. Receiving no response, Plaintiff went to Waycross South's business office on August 11, 2016 and spoke in person to "Steven Xu" who

represented himself as a co-owner of Waycross South. Plaintiff "warned him that Waycross South could be held in contempt of court and penalized monetarily if it did not comply with the subpoena," whereupon Mr. Xu asked Plaintiff to send a list of the information he wanted via email. (Doc. 87 at 2). Two weeks later, on August 26, 2016, Plaintiff filed his motion, representing that Waycross South still had not produced the requested information.

Rule 69(a)(2) permits any judgment creditor to obtain discovery from any person – including non-parties – as provided in the Federal Rules of Civil Procedure, including through a subpoena issued under Rule 45.[4]

> "In the absence of any contrary agreement between the parties, the scope of post-judgment discovery is broad ... and includes the right to obtain discovery from non-parties." *GATX Corp. v. Appalachian Fuels, LLC,* No. 09–41, 2011 WL 4015573, at *2 (E.D.Ky. Sept.9, 2011) (citing *U.S. v. Conces,* 507 F.3d 1028, 1040 (6th Cir.2007)). Judgment creditors are entitled to "utilize the full panoply of federal measures provided for under federal and state law to obtain information from parties and non-parties alike, including information about assets on which execution can issue or about assets that have been fraudulently transferred." *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559, 561 (S.D.N.Y.1977). However, there are limits to post-judgment discovery regarding third parties and "[t]he party seeking such discovery must make 'a threshold showing of the necessity and relevance' of the information sought." *Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC,* No. 5:11–CV–281, 2012 WL 5868903, at *2 (E.D.Ky. Nov.20, 2012) (quoting *Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.,* 148 F.R.D. 662, 664 (M.D.Fla.1993)).

*F.T.C. v. Trudeau*, No. 1:12-MC-022, 2012 WL 6100472, at *4 (S.D. Ohio Dec. 7, 2012).

The only limits on post-judgment discovery from a non-party by a judgment creditor are the limits that apply generally to all discovery requests to a non-party,

---

[4] While this Court has discovered no procedural prohibition to seeking post-judgment enforcement of a subpoena under the circumstances presented – where the underlying case remains open – more typically a motion to compel (or conversely, to quash) enforcement of a post-judgment subpoena issued to a non-party is through initiation of a separate miscellaneous action in this Court.

including such concerns as relevancy and proportionality (or undue burden). Consideration of nonparty status is always one factor in the analysis of the burden imposed in compelling compliance with a subpoena. *Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518 (W.D. Tenn., 1999). As another court put it,

> Although post-judgment discovery of third parties is certainly allowable under Rule 69, the inquiry "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of the debtor to third persons." *Caisson Corp. v. County West Building Corp.,* 62 F.R.D. 331, 334 (E.D.Pa.1974). The scope of discovery against third parties is therefore generally limited to "the financial affairs of the judgment debtor."

*Matthias Jans & Associates, Ltd. v. Dropic*, No. 01-MC-26, 2001 WL 1661473, at *2 (W.D. Mich. Apr. 9, 2001).

This Court has two reasons for declining to grant Plaintiff's motion to compel in full. First, there is some ambiguity that the subpoena was properly served, since Plaintiff's proof of service appears to be a "tracking" notice by the United States Postal Service, indicating service by mail to a post office box. Rule 45 requires "delivering a copy [of the subpoena] to the named person." Many courts, including courts within the Sixth Circuit, have held that "Rule 45 requires personal service." *OceanFirst Bank v. Hartford Fire Ins. Co.*, 794 F. Supp.2d 752 (E.D. Mich. 2011); *see also McClendon v. TelOhio Credit Union, Inc.*, 2006 WL 2380601 *2 (S.D. Ohio Aug. 14, 2006). On the other hand, in *Powell v. Time Warner Cable*, 2010 WL 5464895 (S.D. Ohio, Dec. 30, 2010), Magistrate Judge Deavers pointed out that the Sixth Circuit has not definitively ruled on the personal service issue, and courts around the country have come to differing conclusions, especially when there is evidence of actual receipt. *Id.* at *3 (collecting cases). While Plaintiff's representation that he spoke to the co-owner of Waycross South on August 11, 2016 suggests actual knowledge of the subpoena in this

8

case, the vast number of courts that have required personal service disfavors imposing draconian sanctions upon a non-party that was not personally served.

Plaintiff seeks the imposition of "civil and criminal contempt of court," and a fine of $300, with an additional sanction of $50 per day each day after September 8, 2016" until Waycross South produces the requested documents. (Doc. 87-8, Proposed Order). The second reason for declining to grant the severe sanctions sought by Plaintiff is that, even assuming that service of the subpoena can be considered to be valid, the information sought appears to be largely duplicative of the credit report previously ordered from Trans Union, another non-party. Thus, the Court has some concern about the redundancy of the information being sought from this second non-party.

### III. Conclusion and Order

On the balance of the facts presented, including Waycross South's failure to respond or to file a motion to quash the subpoena, **IT IS ORDERED**:

1. Plaintiff's post-judgment motion to compel non-party Waycross South Properties LLC to respond to the subpoena seeking records concerning Kevin Calvin (Doc. 87) is **GRANTED IN PART**;

2. Waycross South Properties LLC shall respond to the previously served subpoena on or before **October 20, 2016**;

3. A copy of this Order shall be mailed to Waycross South Properties LLC, care of its statutory agent, Xiaomu Hu, at P.O. Box 425, Mason Ohio 45040, with a second courtesy copy to be mailed to Waycross South Properties LLC, 431 Ohio Pike, Cincinnati, Ohio 45255.

4. Because default judgments have been entered against all remaining Defendants, because post-judgment enforcement of the pending subpoena is not impacted by closure of this case, and because post-judgment interest is calculated from entry of "Final Judgment," this case should be resubmitted to the presiding district judge for consideration of whether the case should be CLOSED, and final judgment entered at this time.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge